IN THE UNITED STATES DISTRICT COURT FOR
THE EASTERN DISTRICT OF VIRGINIA
Alexandria Division

| | |
|---|---|
| Cheyanne K. Smith,<br>*Plaintiff*,<br><br>v.<br><br>CP VI Braddock Station, LLC, *et al.*,<br>*Defendants*. | No. 1:25-cv-01266-MSN-WEF |

MEMORANDUM OPINION AND ORDER

This matter comes to the Court on Defendants CP VI Braddock Station, LLC ("Braddock") and GREP Atlantic, LLC ("Greystar") (collectively "the Former Landlords") and Defendant PP Eisenhower Investors, LLC ("Eisenhower") Motions to Dismiss Plaintiff's Amended Complaint pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. ECF 40, 48. Having reviewed the motions, and finding that oral argument will not materially aid the Court's decisional process, the Court will dismiss this case.

## I. Background

### A. Factual Background

On July 31, 2025, Plaintiff Cheyanne Smith, proceeding *pro se*, filed a complaint under the Fair Housing Act (FHA), Violence Against Women's Act (VAWA), and abuse of process against Defendants. Plaintiff brings several claims against all Defendants stemming from their tenancy with the Platform Apartments (the "Platform") and The Point at Eisenhower Apartments ("The Point"), apartment complexes in Alexandria, Virginia (ECF 35, 35-1 through 35-13). The Platform is owned by Defendant Braddock and managed by Defendant Greystar. The Point is

owned by Defendant Eisenhower. ECF 35 ¶¶ 2, 10-11; ECF 43-1 (the Former Landlord's Corrected Memorandum in Support of Motion to Dismiss) at 2; ECF 48 at 1.

In essence, Plaintiff alleges that Defendants retaliated against them for complaints they made regarding "harassing behavior" from their neighbors, including an internal report to Property Manager Kevin Yoo, an internal fair housing complaint with management, a VAWA Emergency Transfer Request, and Fair Housing complaints with the Virginia Department of Professional and Occupational Regulation and the U.S. Department of Housing and Urban Development (HUD). ECF 35 ¶ 40-43; ECF 35-1, -2, -3, -4. All these complaints were against the Former Landlords.

Plaintiff makes multiple claims of the retaliatory behavior they allege, including, but not limited to, nonrenewal and termination of their lease with the Former Landlords and an Unlawful Detainer (UD) action filed by Defendant Eisenhower from Defendants. ECF 35 ¶¶ 48-50, 82, 85, 101; ECF 35-13.

Defendants Braddock and Greystar filed a joint Motion to Dismiss on December 8, 2025 (ECF 40), and Defendant Eisenhower filed its own Motion to Dismiss on February 11, 2026 (ECF 48). Defendants' Motions to Dismiss for failure to state a claim have been fully briefed.[1]

## II. LEGAL STANDARD

The Court must grant a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) if a complaint fails as a matter of law "to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). To survive a motion to dismiss, a complaint must contain facts sufficient to "state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007);

[1] On May 4, 2026, Plaintiff filed a Notice of Clarification Regarding Authorities Cited in First Amended Complaint (ECF 53). The Court will construe this Notice as a sur-reply, and because Plaintiff did not request leave to file this Notice, as required per Local Rule 7(f)(1), the Court did not consider this notice in entering this Order.

*see also Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). At the motion-to-dismiss stage, a plaintiff must merely allege sufficient facts that support a claim for relief. *Bass v. E.I. DuPont de Nemours & Co*., 324 F.3d 761, 765 (4th Cir. 2003). When considering a motion under Rule 12(b)(6), the Court "must accept as true all of the factual allegations contained in the complaint" and must "draw all reasonable inferences in favor of the plaintiff." *E.I. du Pont de Nemours & Co. v. Kolon Indus., Inc*., 637 F.3d 435, 440 (4th Cir. 2011) (internal quotation marks omitted). A plaintiff need not include "detailed factual allegations," but must include in their complaint more than bald accusations or mere speculation. *Bell Atl. Corp*., 550 U.S. at 555. The Court may consider those allegations appearing on the face of the complaint as well as exhibits attached to the complaint. *See* Fed. R. Civ. P. 10(c); *Goines v. Valley Cmty. Servs. Bd.*, 822 F.3d 159, 165-66 (4th Cir. 2016). The Court may consider these documents without converting the motion to dismiss into a motion for summary judgment. *Lokhova v. Halper*, 441 F. Supp. 3d 238, 252 (E.D. Va. 2020).

A *pro se* complaint should be liberally construed. *Gordon v. Leeke*, 574 F.2d 1147, 1151 (4th Cir. 1978). But the Court's "task is not to discern the unexpressed intent of the plaintiff." *Laber v. Harvey*, 438 F.3d 404, 413 n.3 (4th Cir. 2006). Nor does the liberal pleading standard "excuse a clear failure in the pleadings to allege a federally cognizable claim." *Laber v. United States DOD*, No. 3:21-cv-502, 2021 WL 5893293, at *2 (E.D. Va. Dec. 13, 2021) (citing *Weller v. Dep't of Soc. Servs*., 901 F.2d 387, 390-91 (4th Cir. 1990)). As the Fourth Circuit explained in *Beaudett v. City of Hampton*, while "[*pro se*] litigants cannot, of course, be expected to frame legal issues with the clarity and precision ideally evident in the work of those trained in law, neither can district courts be required to conjure up and decide issues never fairly presented to them." 775 F.2d 1274, 1276 (4th Cir. 1985).

## III. ANALYSIS

### a. Plaintiff's Amended Complaint Fails to State a Claim Under the Fair Housing Act[2]

In their Complaint, Plaintiff claims that Defendants' conduct violated 42 U.S.C. § 3617. ECF 35 ¶¶ 19(a), 213. Plaintiff made a complaint to the Former Landlords about an incident of harassment and to request a transfer to another unit on the Former Landlords' property under the VAWA. *See id.* ¶¶ 109, 147. Plaintiff alleges that after the VAWA transfer request was denied, Plaintiff then filed DPOR and HUD complaints and experienced retaliation for doing so. *See id*. ¶¶ 112, 154-155.

The FHA prohibits discrimination in "the terms, conditions, or privileges of sale or rental of a dwelling, ... because of race, color, religion, sex, familial status, or national origin." 42 U.S.C. § 3604(b). A claim for retaliation under 42 U.S.C. § 3617 requires that Plaintiff allege that (1) they were engaged in protected activity; (2) [Defendants were] aware of that activity; (3) [Defendants] took adverse action against them; and (4) a causal connection existed between the

---

[2] Defendants argue that Greystar, the property management company for the Platform, is not a proper Defendant in this action. Defendants argue Greystar is not liable for the claims against Braddock, since Greystar did not contract or otherwise interact with Plaintiff in its direct capacity, nor has Plaintiff made any direct claims against it and its employees which falls outside of the scope of the agency relationship with Former Landlord. ECF 43-1 at 2, 11-12. Because the Court dismisses Plaintiff's VAWA and abuse of process claims against Defendants Braddock and Greystar on other grounds, it will narrow the inquiry of whether Greystar is a proper Defendant for Plaintiff's FHA claims. The Court finds that it is.

The FHA imposes liability in accordance with traditional agency principles. "Under the Fair Housing Act, a corporation ... '[is] responsible for the acts of a subordinate employee [in violation of the Act], even though these acts were neither directed nor authorized.'" *Saunders v. General Services Corp.,* 659 F. Supp. 1042, 1059 (E.D. Va. 1987) (quoting *Harrison v. Otto G. Heinzeroth Mortgage Co.,* 430 F. Supp. 893, 897 (N.D. Ohio 1977)); *see also Marr v. Rife*, 503 F.2d 735, 741 (6th Cir.1974) ("The discriminatory conduct of an apartment manager or rental agent is, as a general rule, attributable to the owner and property manager of the apartment complex, both under the doctrine of respondeat superior and because the duty to obey the law is non-delegable."). Mr. Yoo, Community Manager for the Platform, identified himself as acting on behalf of both "Platform and Greystar as a company" in his communication with Plaintiff regarding their reports, and describes actions "[w]e are currently taking the following steps to address your concerns." ECF 35-1 at 2; *see id.* ("Platform and Greystar as a company do not condone any form of harassment, discrimination, or hateful behavior."). As such, the Court finds that Defendant Greystar interacted in its direct capacity with Plaintiff with regard to the allegations related to Plaintiff's FHA claim. Consequently, Greystar may be held liable under the FHA for the acts of its officers and/or employees.

protected activity and the asserted adverse action. *Hall v. Greystar Mgmt. Servs., L.P.*, 637 F. App'x 93, 98 (4th Cir. 2016) (citations omitted). The Fair Housing Act is "broad and inclusive" in protecting against conduct which interferes with fair housing rights and is subject to "generous construction." *Trafficante v. Metropolitan Life Insurance Co*., 409 U.S. 205, 209 (1972).

**Protected Activity.** The first element of § 3617 is met here. Plaintiff engaged in a protected activity when they reported the alleged stalking to the Former Landlords and requested a transfer to another unit on the Former Landlords' property under the VAWA. ECF 35 ¶¶ 109, 147. When Plaintiff's VAWA transfer request was denied, Plaintiff subsequently filed DPOR and HUD complaints, which also constitutes protected activity. *See id.* ¶¶ 112, 154-155.

**Defendants' Knowledge of Protected Activity.** The Court finds the second element is met only with respect to Plaintiff's claims against the Former Landlords. Plaintiff sufficiently alleges that Defendants Braddock and Greystar were aware of the protected activity through their correspondence with Plaintiff. ECF 35-1 (Emails with Platform Manager of the Former Landlords).

But Plaintiff does not plausibly allege that Defendant Eisenhower had knowledge of Plaintiff's protected activity. Plaintiff alleges, "Defendants operated as joint participants, agents, alter egos, and/or affiliated entities, coordinating actions across properties to interfere with Plaintiffs federal housing rights," ECF 35 ¶ 15, and refers to Defendants as a "corporate network," *id.* ¶¶ 1, 90, 112(h). They point to Defendants being represented by the same attorney as evidence of this assertion. *Id.* ¶¶ 1, 16; ECF 50 (Plaintiff's Opposition to Eisenhower's MTD) at 1. The Court finds this allegation conclusory and insufficient to support a claim that Defendant Eisenhower had knowledge of Plaintiff's protected activity. Plaintiff does not allege that any individual at Eisenhower who may have been a decisionmaker with respect to the adverse actions

against Plaintiff had any knowledge of Plaintiff's complaints. *Conrad v. CSX Transportation, Inc.*, 824 F.3d 103, 108 (4th Cir. 2016) ("The 'knowledge' relevant for a retaliation claim ... must be tied to the decision-maker involved in the unfavorable personnel action."). Because Plaintiff fails to allege Eisenhower had knowledge of their protected activity, the Court dismisses Plaintiff's FHA claim against Defendant Eisenhower.

**Adverse Action:** Next, the adverse action requirement encompasses coercion, intimidation, threats, or interference as listed in § 3617. *Bryant v. City of Norfolk*, No. 2:20-cv-RCY, 2021 WL 765405, at *4 (E.D. Va. Feb. 26, 2021). HUD promulgated a regulation purporting to interpret § 3617, which includes the following in a non-exclusive list of prohibited conduct: "Retaliating against any person because that person has made a complaint, testified, assisted, or participated in any manner in a proceeding under the Fair Housing Act." 24 C.F.R. § 100.400. The adverse action element is analyzed based on whether a "reasonable person" would find the action to be "materially adverse" in the context in which it was taken. *Bryant*, 2021 WL 765405, at *4.

Plaintiff alleges retaliation in the form of "retaliatory non-renewals, coercive attorney letters, false allegations, abusive conduct by staff, and unlawful eviction filings." ECF 35 ¶ 23. The alleged adverse actions include:

a. CP VI Braddock Station, through Kevin Yoo, issued a retaliatory non-renewal;
b. Yoo added a fabricated $2,300 ledger charge;
c. GREP Atlantic LLC and its agents failed to process the VAWA transfer;
d. No required denial letters were issued, violating 24 C.F.R. § 5.2005(e)(4);
e. ARHA[3] was never notified of the proposed non-renewal, violating 24 C.F.R. § 982.310(e);
f. Assistant manager Amber Holmes attempted to assault Plaintiff on July 9, 2025;
g. Attorney Crystal Kramer issued a coercive letter on Oct. 1,2024;

[3] Plaintiff was a tenant of the Platform through their participation as a Housing Choice Voucher tenant through the Alexandria Redevelopment & Housing Authority (ARHA). ECF 35 ¶¶ 9, 31.

h. The Corporate Network coordinated to file a baseless Unlawful Detainer in October 2025.

*Id.* ¶ 112. Of these allegations, the Court finds only the non-renewal and termination of Plaintiff's lease (*id.* ¶ 112 (a)) constitute adverse actions. *Fedynich v. Lozano*, 3:20-cv-00260-MHL, 2021 WL 710368, at *14 (E.D. Va. Feb. 23, 2021). Since it relates to Plaintiff's non-renewal, the Court assumes without deciding that Former Landlord's alleged failure to notify ARHA of the non-renewal of Plaintiff's lease (ECF 35 ¶ 112(e)) also constitutes an adverse action.

**Causal Connection:** The final element of a § 3617 claim requires that the plaintiff establish a "causal connection" between the adverse action taken and the plaintiff's exercise of their rights under the FHA. *Hall*, 637 F. App'x at 98. Thus, the question is whether the Defendants' actions were motivated by Plaintiff's exercise of their FHA rights. An important factor in the causation determination is the temporal proximity between Plaintiff's protected activity and Defendants' adverse actions. *Harris v. Vanderburg*, 584 F. Supp. 3d 82, 100 (E.D.N.C. 2022). The Fourth Circuit has ruled that "two-and-a-half months between the protected activity and the adverse action is sufficiently long so as to weaken significantly the inference of causation between the two events in the absence of other evidence of retaliation." *Wilcox v. Lyons*, 970 F.3d 452, 457 (4th Cir. 2020) (quotation and citations omitted). Here, Defendants notified Plaintiff of the lease nonrenewal on April 9, 2025, approximately eight to ten months after Plaintiff engaged in the protected activity of making the VAWA transfer request and filing complaints with DPOR and HUD. This length of time renders a claim of temporal proximity implausible. *Hall*, 637 F. App'x at 99 (rejecting a retaliation claim because of a 10-month lapse between the protected activity and adverse action, explaining that "a court will not infer a causal link based on temporal proximity alone unless the adverse action occurred very

close to ... or shortly after the defendant became aware of the protected activity") (internal quotation marks and citations omitted).

**b. Plaintiff's VAWA Claim Fails as a Matter of Law.**

In Count II, Plaintiff brings a claim under 34 U.S.C. § 12491, a provision VAWA, against Defendants. But there is no private right of action to enforce § 12491's protections. *See United States v. Morrison*, 529 U.S. 598, 627 (2000) (holding the private right of action under the VAWA is unconstitutional); *Cureton v. Barnes*, No. 5:25-CT-03071-M-RJ, 2026 WL 917416, at *3 (E.D.N.C. Mar. 31, 2026). "Instead, the statutory scheme mandates [t]he Secretary of Housing and Urban Development and the Attorney General [to] implement and enforce [34 U.S.C. § 12491][.]" *Haywood v. Warner Robins Hous. Auth.*, No. 25-0296, 2026 WL 867389, at *2 (M.D. Ga. Mar. 30, 2026). Plaintiff's VAWA claim thus fails as a matter of law. *See Canty-Massey v. Vantage Mgmt., Inc.,* No. CV GLR-23-2227, 2024 WL 2941265, at *3 (D. Md. June 11, 2024) (dismissing VAWA claim with prejudice).

**c. Plaintiff Fails to State a Claim for Abuse of Process.**

Plaintiff's Third Count alleges that Defendants engaged in abuse of process by filing an unlawful detainer against Plaintiff on October 17, 2025, despite Plaintiff curing the balance on their ledger prior to that date, and by "adding an illegal $267 attorney fee to Plaintiff's ledger." ECF 35 ¶ 169, 171, 174.

Under Virginia law, abuse of process is the "the wrongful use of process after it has been issued." *Triangle Auto Auction, Inc. v. Cash*, 380 S.E.2d 649, 650 (Va. 1989). To establish an abuse-of-process claim, a plaintiff must plead: "(1) the existence of an ulterior purpose; and (2) an act in the use of the process not proper in the regular prosecution of the proceedings." *Donohoe Constr. Co. v. Mt. Vernon Assocs.*, 369 S.E.2d 857, 862 (Va. 1988). A "legitimate use

of process to its authorized conclusion, even when carried out with bad intention, is not a malicious abuse of that process." *Id.* Rather, abuse of process is the "perversion of regularly-issued process to accomplish some ulterior purpose for which the procedure was not intended." *Id.*

Plaintiff's Amended Complaint does not allege that the Former Landlords filed an unlawful detainer action. Plaintiff attempts to hold the Former Landlords liable by making a conclusory allegation that Defendants "coordinated" to file the UD. ECF 35 ¶ 169. The Amended Complaint does not allege facts sufficient for the Court to make an inference that any coordination occurred between Defendants. Therefore, they fail to state a claim of abuse of process against the Former Landlords.

Plaintiff also fails to state a claim against Defendant Eisenhower. Plaintiff alleges the purpose was to intimidate Plaintiff for their "retaliatory involvement" at their prior residence. *Id.* ¶ 177. But again, Plaintiff has failed to allege that Eisenhower had knowledge of their protected activity.

Filing an unlawful detainer action for the purpose of evicting a tenant from property is the purpose of a UD. Va. Code Ann. § 8.01-124 (2021). Plaintiff fails to allege that the unlawful detainer was filed for another, ulterior purpose. Plaintiff alleges that they had a past-due balance on their rent ledger, and they were issued a five-day notice to pay rent or quit on September 8, 2025. *See* ECF 35 ¶ 79, 81, and ECF-10. The UD was filed after Plaintiff did not pay the past-due amount until a month later, around the time that suit was filed. The unlawful detainer proceedings were dismissed as "redeemed" pursuant to Va. Code § 55.1-1250 soon after that litigation commenced. ECF 35-13.

Plaintiff also alleges Defendant Eisenhower added a "$267 attorney fee for initiating an illegal UD." ECF 35 ¶ 84. However, Plaintiff does not allege facts for the Court to conclude that the fee was unlawful or in violation of Plaintiff's lease. Therefore, the Court finds this allegation insufficient to state a claim of abuse of process.

Because Plaintiff has alleged only that Defendant Eisenhower legitimately used an unlawful detainer action for its authorized purpose of evicting them, even if it did so with malicious intent, its actions do not constitute an abuse of process and Plaintiff fails to state a claim.

## IV. CONCLUSION

For the reasons discussed above, it is hereby

**ORDERED** that Defendants' Motions to Dismiss (ECF 40, 48) is **GRANTED;** it is further

**ORDERED** that Plaintiff's Amended Complaint (ECF 35) is **DISMISSED WITH PREJUDICE**; it is further

**ORDERED** Defendant Greystar LLC and CP VI Braddock Station, LLC Motions to Quash (ECF 13, 16) are **DENIED AS MOOT**; it is further

**ORDERED** Plaintiff's Request for Entry of Default as to CP VI Braddock Station, LLC (ECF 20) and Motion for Corrective Procedural Orders, Amendment of Summons Nunc Pro Tunc, and Entry of Default (ECF 29) are **DENIED AS MOOT**; it is further

**ORDERED** that Plaintiff's Motion for Case Management Relief, Status Conference, and Disposition of Pending Motions (ECF 54) is **DENIED AS MOOT**.

It is **SO ORDERED**.

This is a final order for the purposes of appeal. To appeal this decision, Plaintiff must file a written notice of appeal with the Clerk of the Court within thirty (30) days of the date of entry

of this Order. A notice of appeal is a short statement indicating a desire to appeal, including the date of the order Plaintiff wants to appeal. Plaintiff need not explain the grounds for appeal until so directed by the court of appeals. Failure to file a timely notice of appeal waives Plaintiff's right to appeal this decision.

The Clerk is directed to forward copies of this Order to Plaintiff, *pro se*, at their email and mailing address of record, and forward a copy of this Order to counsel of record.

/s/
Michael S. Nachmanoff
United States District Judge

September 29, 2026
Alexandria, Virginia